CANDEE *vs.* LORD and others.

A judgment obtained without fraud or collusion, is conclusive evidence, in suits between creditors in relation to the property of the debtor, of the indebtedness of the latter, and of the amount of such indebtedness.

A general replication to an answer in chancery, does not put in issue immaterial allegations.

Where the complainant, instead of excepting to an answer which set up an immaterial fact as a defence, put in a replication; *held* nevertheless, that such fact was not in issue and not the subject of trial or proof.

A motion made in chancery for an issue to be awarded for trial by jury, is addressed to the discretion of that court, and the order made upon the motion, is therefore not appealable to this court.

APPEAL from the late Court of Chancery. On the 29th of March, 1844, the complainant recovered judgment against the defendant Russell Lord, for $1142,90 damages and costs. This judgment was obtained upon a demand which existed anterior to the judgments hereafter mentioned. After execution had been duly issued and returned unsatisfied, the complainant filed his bill in this cause, before the vice chancellor of the Fifth Cir-

[1] See *Brown* v. *Brockett*, 55 How. Pr. 32 ; *Philbrook* v. *Kellogg*, 21 Hun 238 ; and *Catlin* v. *Adirondack Co.*, 81 N. Y. 639, reversing s. c. 20 Hun 19.

cuit, against the judgment-debtor, and against Henry Lord, and William Champlin, setting forth the recovery of such judgment, and the issuing and return of the execution; and alleging (among other things), that in August, 1843, the said Russell Lord, without consideration and with a view to defraud his creditors, confessed a judgment to said Henry Lord for a pretended debt of $1400, on which execution was issued, under which certain real estate of Russell Lord was sold on the 10th *of *270] February, 1844, and purchased by Henry Lord for the amount of his judgment. The bill also alleged that in August, 1843, Russell Lord confessed another fraudulent judgment to the defendant Champlin, for a pretended debt of $1250, on which execution was issued; and that in February, 1844, certain other real estate of Russell Lord was sold thereon, which was purchased by Champlin and one Muir, and their bid was applied on Champlin's judgment to the amount necessary to satisfy the same. It was also alleged that deeds were executed by the sheriff in pursuance of such sales. The bill claimed (among other things) that the sums bid upon the sales under such fraudulent judgments belonged to the creditors of Russell Lord, and that the defendants Henry Lord and William Champlin should account to the complainants therefor. It was further charged that personal property of Russell Lord to a considerable amount was sold and bid in by Henry Lord, under his judgment and execution. And the bill also claimed that he should account for such personal property at its value.

The defendants answered the bill separately, and the answers of Champlin and of Henry Lord insisted, among other things, that the complainant's judgment was obtained in a suit brought against said Russell Lord upon a *forged endorsement* of a promissory note, and this was insisted upon as a ground of defence to the bill, so far as they were concerned. The usual general replications were put in to the answers, and the cause being at issue, the defendants, Champlin and Henry Lord, applied to the vice chancellor for an order directing the question of fact *to be tried by a jury.* The vice chancellor denied the motion, and the defendants appealed to the chancellor, who

reversed the order of the vice chancellor, and awarded issues for trial by jury, and one of the issues, so awarded, was whether the endorsement upon which the complainant obtained his judgment *was a forgery.* From the order of the chancellor the complainant appealed to this court.

*H. Denio,* for appellant. The defendants, Henry Lord and William Champlin, had no right, in this suit, to impeach the judgment which the complainant had recovered against Russell *Lord. The demand of the complainant, on which the judgment was recovered, existed anterior to the time when [*271 the defendants acquired their pretended liens; and the defendants were well aware of the existence of such demand, and that the complainant was about to prosecute it. To give effect to the principle of law which renders void all transactions made with intent "to delay, hinder, or defraud creditors and *others* of their just and lawful *actions,*" &c., any interference with such an intent, with the property of another, against whom an action is pending, or is about to be commenced, must be pronounced void as against the judgment in such action, without reference to the grounds on which such judgment was recovered. (1 *R. L.* 75, § 2 : *Jackson* v. *Meyers,* 18 *John.* 425 ; *Wilcox* v. *Fitch,* 20 *id.* 472.) One who purchases or takes a lien upon another's property, with a view to defraud his creditors, is *in privity* with such debtor. Judgments bind parties as well as privies. (1 *Phil. Ev. Gould's ed.* 324.) It makes no difference that the transaction was before the judgment. The fraudulent intent connects the party with the debtor, and obliges him to abide the issue between him and the creditor.

If this were not so, one taking a conveyance from a party sued for trespass, slander, &c., with intent to protect the property from the judgment, could claim the right to try the trespass or slander suit again. And a debtor could always obtain a new trial by putting the property, *pendente lite,* into the hands of a fraudulent alienee, and procuring him, when challenged, to ask for an issue. An officer sued by a stranger for levying upon property on an execution, can raise the question of

fraud by producing the judgment; but if the doctrine of the respondents is true, he must also prove the existence of the debt; or the plaintiff would be permitted to impeach the judgment. (1 *Phil. Ev. Gould's ed.* 391; *Martin* v. *Podger*, 2 *Bl. Rep.* 701; *Cowen & Hill's Notes*, 1011, and cases.) So if an officer sue one for taking away property on which he had levied an execution, he can now succeed by showing the judgment and execution, and proving that the defendant claims under a conveyance from the judgment debtor, made with a view to defraud creditors. But upon the doctrine of the other side,

*272]   *the defendant could have an issue as to the existence of the debt. So every trustee of the debtor, whether honest or fraudulent, could, when proceeded against by a judgment creditor, call in question the debt for which the judgment was rendered.

But if the judgment does not bind the trustee, or fraudulent grantee, conclusively, it is because it is between other parties, and then it is no evidence at all. The same principle which permits it to be received at all, gives it conclusive effect. But the statute regulating creditors' bills provides that such suits may be maintained by any one having a *judgment or decree* on which an execution has been returned unsatisfied. (2 *R. S.* 174, § 38.) It is believed that no authority can be shown to support the position of the respondents. The cases are the other way. (*Rogers* v. *Rogers*, 3 *Paige*, 379; *Shufelt* v. *Shufelt*, 9 *id.* 147; *French* v. *Shotwell*, 6 *John. Ch.* 235.)

If an issue is proper at all, and we are right in believing that the judgment cannot be attacked, the order of the chancellor is erroneous, and should be modified. If the respondents are right in either of the above positions, the order should be reversed or modified, with costs, and the cause be remitted to the Supreme Court.

*C. P. Kirkland*, for respondents. I. The *indebtedness* of Russell Lord to the complainant at the time the respondents, Henry Lord and William Champlin, obtained their judgments against him, is simply a question of fact, without establishing which, the bank could not sustain their suit; and this is conceded in the decisions of both the vice chancellor and the chancellor, and is too obvious to be questioned.

Candee *v.* Lord.

II. The judgment of the complainant against Russell Lord as evidence of that indebtedness, in no manner concludes or estops the respondents, Henry Lord and Champlin, on this question of fact. They were not parties to that judgment, and had no control of the suit, or power over it to appeal. They were in no sense privies to that judgment, or to Russell Lord in respect thereto. That judgment was rendered nearly two months *after* the respondent's rights under their judgment had been perfected, and about eight months after their rights had accrued. (1 *Phil.* [*273 *Ev.* 322, 326; *Cowan & Hill's Notes, p.* 815, *n.* 569; *Paynes* v. *Coales,* 1 *Munf.* 373, 398; *Jackson v. Vedder,* 3 *John. R.* 8; *Case* v. *Reeves,* 14 *Id.* 79; *Twambly* v. *Hinley,* 4 *Mass.* 441; *Wood* v. *Stephen,* 1 *S. & R.* 175; *Johnson* v.——, 1 *Wash. R.* 187; *Cowles* v. *Hart,* 3 *Conn. R.* 516; *Turpin* v. *Thomas,* 2 *Hen. & Munf.* 139; *Fonb. Eq.* 693; *Wood* v. *Davis,* 7 *Cranch,* 271; *Davis* v. *Wood,* 1 *Wheat.* 6; *Baring* v. *Fanning,* 1 *Paine,* 549; *Hunt's Lessee* v. *McNeil,* 1 *Wash. R.* 70; *Chirac* v. *Reinicker,* 11 *Wheat.* 280, 296, 316; 2 *Pet.* 613; 6 *id.* 328; 1 *id.* 202; 1 *Stark. Ev.* 191; *Chapman* v. *Chapman,* 1 *Munf.* 398; 2 *Har. & John.* 409; *Smith* v. *Lane,* 12 *Serg. & Rawle,* 80; 4 *Rand.* 282; 1 *Mill. Lou. R.* 373 *to* 380; *Cowen & Hill's Notes,* 822; *Co. Litt.* 352, *a, notes d. f.; id.* 352, *b, note l.;* 3 *Wend.* 42; 1 *Salk.* 276; 2 *Ld. Raym.* 1036; 2 *Bl.* 827; 3 *Wils.* 304; 3 *East,* 346, 365; 2 *Barn. & Ald.* 662, 672; *Burr.* 1853; 7 *Cranch,* 565; 14 *Mass. R.* 243; 17 *id.* 368; 2 *John. R.* 29; 8 *Wend.* 40; 8 *Cowen,* 406; *Steph. Pl. & Ev.* 238, 260; 3 *Salk.* 276; 17 *S. & R.* 319; 3 *Cow.* 120; 6 *Wend.* 289; 5 *Hill,* 131; 24 *Wend.* 35, 52; 2 *Cas. Ch.* 119; 4 *Hill,* 531; 6 *Id.* 534; 2 *Id.* 215; 3 *Paige,* 379.)

III. The most that can be claimed for that judgment, is, that it is prima facie evidence of the fact of R. Lord's indebtedness, and this effect is given to it, by the decision of the chancellor. In truth, no question really arises here as to estoppel, or the rules on that subject. The simple question is, as to the kind of evidence, the nature, quality, weight, &c. of the proof required, or admissible, to establish the fact that Russell Lord was indebted to the complainant, at the time the judgments of the re-

spondents, Champlin and H. Lord, were entered. The question of Russell Lord's indebtedness to the complainant, in August, 1843, is a vital question in the cause. If his endorsement was a forgery, there was no such indebtedness. And it would seem impossible to say that the respondents, Champlin and H. Lord, had not a right to litigate that question and prove that forgery.

IV. But the appellant, by replying, instead of excepting, to the answer, has put in issue the question of forgery, and has thus waived all right to insist on the estoppel; and if the fact of forgery *was immaterial when set up in the answers, in consequence of the estoppel of the judgment, the replication (by waiving that estoppel), opened the question of the indebtedness of R. Lord at the time of the rendition of the judgments of the other respondents, and made it material, and of the same effect, in regard to that question, as though no judgment had been rendered.

V. Irrespective of the question of forgery, it was perfectly fit and proper to award an issue to try by jury the questions of fraud, and therefore the chancellor's order will not be reversed.

GARDINER, J., delivered the opinion of the court. The most important question in this cause, is whether a judgment obtained without fraud or collusion, is conclusive evidence in suits between creditors, in relation to the property of the judgment debtor, of the indebtedness of the latter.

A debtor may be said to sustain two distinct relations to his property; that of owner, and quasi trustee for his creditors As owner he may contract debts to be satisfied out of his property, confess judgments, create liens upon it, sell or give it to thers at pleasure; and so far as he is personally concerned, will be bound by his own acts. But the law lays upon him an obligation to pay his debts, and holds him in behalf of his creditors to the exercise of good faith in all transactions relating to the fund upon which they must depend for payment. He can, therefore, neither create a debt, or do any of the things above mentioned mala fide to their prejudice. The common law, of which the English statute and our own is but the exposition declares that every such debt, judgment or assurance, contracted

Candee *v.* Lord.

or given with the intent to hinder, delay or defraud his creditors, as against them, to be void. And equity in many cases holds the debtor and his confederates in the fraud as trustees for the parties aggrieved. The rights of creditors to the property of the debtor, are to be worked out through the different relations to which I have alluded.

In creating debts, or establishing the relation of debtor and creditor, the debtor is accountable to no one unless he acts *mala fide. A judgment, therefore, obtained against the latter without collusion, is conclusive evidence of the rela- [*275 tion of debtor and creditor against others : 1st, because it is conclusive between the parties to the record, who in the given case have the exclusive right to establish it; and 2d, because the claims of other creditors upon the debtor's property are through him, and subject to all previous liens, preferences or conveyances made by him in good faith. Any deed, judgment or assurance of the debtor, so far at least as they conclude him, must estop his creditors and all others. Consequently, neither a creditor nor stranger can interfere in the bona fide litigation of the debtor, or re-try his cause for him, or question the effect of the judgment as a legal claim upon his estate. A creditor's right, in a word, to impeach the act of his debtor, does not arise until the latter has violated the tacit condition annexed to the debt ; that he has done and will do nothing to defraud his creditors.

Where, however, fraud is established, the creditor does not claim *through* the debtor, but adversely to him, and by a title paramount, which overreaches and annuls the fraudulent conveyance or judgment by which the latter himself would be estopped. It follows from the principles suggested, that a judgment obtained without fraud or collusion, and which concludes the debtor ; whether rendered upon default, confession, or after contestation, is upon all questions affecting the title to his property, conclusive evidence against his creditors, to establish 1st, the relation of creditor and debtor between the parties to the record, and 2d, the amount of the indebtedness. This principle is assumed in our statute in relation to creditors' bills, (2 *R. S.* 174, § 38,) and decided in *Rogers* v. *Rogers*, (3 *Paige,* 559 ;) 2 *Greenlf. Ev.* 531 ; 4 *Rawle*, 288–9.

2 COMST.—18

Candee *v.* Lord.

It is immaterial whether the debt was created prior or subsequent to the fraudulent lien, or conveyance, which is sought to be removed. The right of the creditor to impeach the assurance of the debtor, arises out of the relation which exists between them at the commencement of the suit for that purpose, and does not depend upon the time when the fraud was consummated. Hence a conveyance made with intent to defraud *276] *subsequent creditors is void at their election. And the fraudulent grantee would not be permitted to allege, in bar of the action against him, that the parties seeking relief were not creditors prior to, or at the time of the conveyance. (1 *Atkyns,* 94; 2 *id.* 481, 512; 8 *Cowen,* 431, 441; 11 *Wheaton,* 209; 1 *Story's Eq.* § 356; *Jackson* v. *Myers,* 18 *John. R.* 425; 20 *id.* 472.) The only difference in the two cases is found in the degree of evidence necessary to establish the fraud. In this case, the defendants have not alleged that the judgment of the complainant was not obtained in good faith. But they insist that there was error in the suit in which it was obtained, in the determination of a question of fact; and that they are not concluded by the defence of the debtor, because they are not in privity with him. We think otherwise. The law which gave the judgment debtor the unlimited right, (when honestly exercised,) to contract debts, to settle and adjust their amount, to secure and to pay them, made him to this extent the representative of all his creditors who should seek the satisfaction of their demands out of his property; so far at least they are in privity with, and claim under their debtor. If, as the defendants insist, they hold the property in question by a title derived under a valid judgment, prior to that of the complainant, their rights cannot be affected by this evidence. If, however, as the bill alleges, their judgment was fraudulent, the complainant, as a creditor, can repudiate it, and claim the property as that of his debtor, his acts to the contrary notwithstanding, and hold his confederates in the frauds accountable as trustee for his benefit. If the defendants would shield themselves under the maxim, *Potior est conditio defendentis,* they should show, at least allege, that the complainant is in *pari delicto.*

But it is insisted that the complainant, by replying instead of excepting to the answer, has waived all right to insist upon the judgment as an estoppel: and that upon the pleadings, the whole question of the indebtedness of the judgment-debtor is opened as a question of fact. The judgment is distinctly stated in the bill, and as distinctly admitted in the answer of the defendants. The estoppel, therefore, appears upon the record. *This [*277 is all that is necessary to satisfy the rule of pleading at law. (*Chit. on Pl.* 592; 1 *Saund.* 326.) In chancery, the general replication only is allowed. It is a denial of the defence and a maintenance of the bill. (*Story's Eq.* § 887.) But it does not put in issue immaterial facts stated in the answer. The complainant might have excepted to the answer, it is true, but he was not obliged to do so. The defendant cannot, by stuffing his answer with irrelevant matter, compel the complainant to except, or to lose the benefit of material facts averred by him and admitted by the answer. This would be to enable a party to take advantage of his own bad pleading. In courts of equity, mispleading in matters of form is never allowed to prejudice any party. (*Story's Eq. Pl.* § 882.

And finally, it is said that the granting of a feigned issue rests in the discretion of the chancellor. This is true, where facts are to be ascertained, not where they are admitted. The defendants admit the judgment, and its legal effect was a question of law, which the chancellor could not submit to a jury. Discretion in this case, implies a right in the chancellor to fix the mode of trial according to his own judgment. But if the judgment as evidence was conclusive, there was nothing to try and of course no room for discretion as to the mode of trial.

My brethren concur in the conclusions above stated, upon all the points discussed except the last. A majority of the court are of opinion that the decision of the chancellor was upon a question of practice, which is not a proper subject of review in this court, and for that reason the appeal should be dismissed.

Appeal dismissed.