(34 Misc. Rep. 232.)

## BREEN v. HENRY et al.

(Supreme Court. Special Term, Lewis County. March, 1901.)

1. ACTION ON JUDGMENT—EVIDENCE—JURISDICTION.

   Where a judgment was recovered in a county court against a debtor, and the complaint did not allege that he was a resident of the county, a receiver of the debtor suing on the judgment may prove that jurisdictional fact by evidence aliunde.

2. SAME—PLEADING.

   Where receiver of judgment debtor sues on a judgment recovered against the debtor, allegation of the complaint that the judgment was "duly recovered" is sufficient to admit proof that the debtor was a resident of the county in which the judgment was obtained.

3. FRAUDULENT CONVEYANCE—CONSIDERATION.

   Services rendered by a son to his father while living on the father's farm are an insufficient consideration for a transfer to the son by the father of most of his property as against the creditors of the father, in the absence of clear evidence of a contract to pay for such services.

4. SAME—EVIDENCE.

   Where there was no satisfactory evidence that a son, who lived on his father's farm for many years, together with his wife, did so under an agreement on the part of the father to pay him for his services, and the son was a cripple, and there was no note or written acknowledgment of any kind evidencing the indebtedness, a conveyance by the father to the son of his property in consideration of such services will be held fraudulent as to creditors.

Action by William B. Breen, receiver of Nicholas Henry, against Nicholas Henry and others, to set aside conveyances made by said defendant Henry of real and personal property to the other defendants.

Frank Bowman and C. S. Mereness, for plaintiff.
Ryel & Merrill, for defendants.

HISCOCK, J. A question arises at the threshold of the case, which may as well be first disposed of, whether the purported judgment recovered by Anna George against the defendant Nicholas Henry, and upon which plaintiff was appointed receiver, and upon which, therefore, this entire action rests, was valid, or void for lack of jurisdiction by the court which rendered it. As above stated, this judgment was rendered by default in the county court of Lewis county. Nicholas Henry, defendant there and here, was personally served with the summons and copy complaint, but did not appear in any manner. The complaint failed to state anywhere that the defendant Henry was at the time of the commencement of the action a resident of the county of Lewis. It is claimed by defendants that it was essential that the complaint in said action should allege this concededly jurisdictional fact, and that, having failed to do so, there is a lack of jurisdiction apparent upon the very face of the complaint and judgment roll, which avoids it and all subsequent proceedings thereon. Upon the other hand, it is claimed by plaintiff that as a matter of fact the defendant Henry was a resident of said county of Lewis, and that said county court did have jurisdiction to render said judgment, and that in this case such facts may be proved for the purpose of sustaining said judgment. Such evidence has been given upon the trial, there being no contest as to the fact that the defendant was such resident, and the question of law alone is presented whether the testimony is available and effectual to support the judgment. The case of Beaudrias v. Hogan, 23 App. Div. 83, 48 N. Y. Supp. 468, in an elaborate and carefully considered opinion seems to decide the question in favor of plaintiff's contention so clearly and fully that it would be superfluous for me to go over the reasoning and argument applicable to the issue. Defendants' counsel in the citation of authorities has apparently failed to discriminate between those cases where this question was raised directly in the action where it arose either by demurrer to the complaint or by appeal from the judgment from a case like the one at bar, where the judgment complained of is attacked outside of the case in which it was rendered by a collateral action or proceedings. In the first class of cases there would, of course, be no opportunity to give evidence outside of the record showing that the jurisdictional facts did really exist. In the latter class of cases—as this one—an issue is presented by the pleadings whether the court rendering the original judgment did have jurisdiction, and under which issue, if competent, evidence could be legitimately given to show that it did. Various objections were made by defendants to the introduction of evidence by plaintiff upon this question. They all raised the question of competency, rather than that of admissibility under the pleadings. But, even if it should be assumed that they raised the latter question, the pleadings fairly present the issue, and cover such evidence. Plaintiff, in his complaint in this suit, alleged that the judgment creditor, George, "duly recovered a judgment in the Lewis county court," etc. The answer denied, in effect, that the court had jurisdiction to render such judgment. This allegation by plaintiff was in form all that was necessary to enable him upon the trial to

give evidence of the facts conferring jurisdiction upon the county court. Code, § 532.

The view which I have taken upon this branch of the question renders it unnecessary to discuss the other contention made by plaintiff that defendant Henry, by voluntarily and personally appearing in the proceedings supplementary to execution instituted upon said judgment, and leading up to and resulting in the appointment of plaintiff as receiver by the county judge of said county court, waived any claim of lack of jurisdiction, and in reality conferred the same upon said judge. The plaintiff in this action seeks to have set aside: (1) A deed executed on or about March 9, 1897, by the defendant Nicholas Henry to his son, the defendant Nicholas J. Henry, of 257.51 acres of land in the town of Crogan, Lewis county. (2) A deed at the same time executed by the same grantor to the same grantee of an undivided one-half interest in about 21.86 acres of land situated in the town of Lowville, in same county, and generally described in the evidence in this case as the "Flats." (3) A transfer at the same time claimed to have been executed by the said grantor to the said grantee of a considerable amount of personal property consisting of cattle, horses, sheep, farming implements, etc., situated on the real estate described in the above two mentioned deeds. (4) A deed at the same time executed by the same grantor to the same grantee of about 25 acres of land, and commonly referred to in the case as the "Wood Lot." (5) A mortgage executed by the defendant Nicholas J. Henry to his wife, the defendant Louise Henry, covering all or part of the premises included in the above deeds. Plaintiff also seeks to have defendant Nicholas J. Henry account for, pay over, and transfer to the plaintiff herein all moneys and securities delivered to him and arising out of the conveyance about the same date as above stated, made by the said grantor, Nicholas Henry, to one Henry Kirch, of about 198 acres of land ordinarily referred to as the "Sugar Bush." The alleged consideration for all of said transfers by Nicholas Henry was $5,000. Upon said date, March 9, 1897, and for many years before that, the defendant Nicholas Henry had been the record owner and in apparently absolute possession of all of the real estate and personal property above mentioned. Upon said date he executed the conveyance of the first three described parcels, consisting, respectively, of 257¼ acres, an undivided one-half interest in about 22 acres, and of 25 acres, to his son, the defendant Nicholas J. Henry, and at the same time a conveyance of 198 acres to one Kirch, who was his son-in-law, and which last conveyance he claims to have executed to carry out a sale made to his son Nicholas J., and who in turn claims to have received from Kirch $500 in cash and a mortgage for $950; making in all $1,450, the alleged purchase price of said premises. The defendant grantor, Nicholas Henry, reserved in the premises conveyed to his son what is claimed to have been intended as a life lease of the property. Said conveyance also contained a provision for the benefit in the way of income of another son, George Henry, with provisions for the disposition of this reservation upon the death of said son. Afterwards various other conveyances and transfers were executed by all or some of these people affecting the premises in question.

In August, 1899, all of the defendants united in executing a mortgage upon all, or nearly all, of the property conveyed to the son Nicholas J. Henry, for $2,500, to one Richardson. This mortgage was executed primarily to secure said Richardson for a debt of something less than $2,000, which was due to him from the original grantor and father, Nicholas Henry; the difference between said indebtedness and the amount of the mortgage as claimed having been paid in cash to the defendant Nicholas J. Henry. The defendant Nicholas J. Henry claims to have transferred and assigned the mortgage for $950 executed to him by Kirch as part of the consideration of the transfer of the sugar bush property to his brother-in-law, one Kieffer. He claims to have executed such transfer of such mortgage, upon which there was due at the time $725, to secure or pay an indebtedness due from him to Kieffer of $100, but he disclaims having any definite arrangement by which Kieffer is to account for the balance of said mortgage over and above said $100. In fact, he claims in one place that the transfer was simply to pay the $100. At still another time before the commencement of this action the defendant Nicholas J. Henry executed to his wife, Louise, a mortgage for $2,500, second to the Richardson mortgage above described, and covering substantially the same property. The only explanation or consideration claimed for this mortgage is $300 loaned and advanced by the wife to her husband at some time, and for the repayment of which no note or agreement was given, and of which no account was kept, and alleged wages for services performed by said Louise for said Nicholas J., and which services were the ordinary ones performed by the wife in the household of the husband.

Reverting now to the conveyances made by Nicholas to Nicholas J. Henry to carry out an alleged sale to Nicholas J., these further facts appear: The property covered by said conveyances, substantially upon the prices fixed by defendants themselves, was worth upwards of $6,000. The consideration given by said defendants for said transfer by their evidence was $5,000, subject to the rights retained by the grantor by way of life estate or life interest. This consideration, it is claimed, was to be paid by the son Nicholas J. Henry to his father, Nicholas, as follows: The son was to assume and pay debts held by various people against his father, amounting to $1,200 or $1,400. He was to accept the conveyances in payment and satisfaction of an alleged indebtedness of about $2,000 due from his father to him for services rendered by him for his father upon the latter's farm from the time he became 21 down to the time of the conveyances, a period of 18 or 20 years. There was a provision in the deeds in favor of the son George, which seems to have been figured at about $900. The balance was to be paid in cash. It was part of the bargain, as testified by the son, that he was to take care of his father as long as he lived, and let him have what money he wanted. So far as the claim by Nicholas J. against his father, Nicholas, which went into the consideration of these conveyances, is concerned, it appeared that the son had during most of his life lived on the father's place, doing work there, except sometimes when he worked for other people for quite a period. He was a cripple, and for several years had resided upon the

premises in question with his wife. The features and characteristics of this claim are substantially the same as are generally presented in a case of this kind. There is no satisfactory evidence of any definite arrangement between the people. There was no note or written acknowledgment of any kind evidencing this indebtedness. No account was presented showing its inception, continuation, or termination. No receipt or other written evidence was given to show that it was canceled by the execution of these conveyances. There was no definite evidence of the moneys claimed to have been turned in by the son to the father for services performed off from the place, or of the moneys acknowledged to have been paid to the former from time to time or for his benefit. The only documentary evidence claimed to bear upon this indebtedness was an account said by the defendant son, Nicholas J., to be in his possession, showing yearly settlements between his father and himself of this account. But, although he claims to have had this account, and although he said his attorneys knew of his having it, when he came to the trial of the case he did not have it present, but, strangely, had forgotten it, and left it at home. Likewise, this reservation of an interest in these premises in favor of the other son, George, for $900, is suggested sometimes to be based upon an indebtedness due from the father to him for services, there being no account of these services, and nothing to show the existence of any valid claim for them. Upon the other hand, in various places it is suggested, rather, that this son was an imbecile, and unable to take care of himself, and that this provision was really made for the purpose of taking care of him. In another place, in his evidence, the son claims that it was part of the understanding and agreement which attended this conveyance that he was to let his father have what money he wanted from time to time, and that he has advanced him certain moneys. The father has remained upon the premises since the conveyances the same as before. It is claimed by the son that he has paid up in part or whole the outside debts of his father, as he agreed to at the time of the conveyance. No adequate explanation is given of why he gave a mortgage upon this property which he had purchased from his father to Richardson to secure a debt of $1,700 or $1,800 due from the father. It is claimed that an agreement had been made between the defendants Nicholas and Nicholas J. Henry for the transfer of this property by the former to the latter in 1895, but no written agreement or memorandum of any kind whatever was made, and no act was performed by either party, which would indicate to an outsider any contemplated transfer of the property. Concededly, the transfer of this property left the defendant Nicholas Henry without sufficient property to pay his debts, including the one represented by the judgment upon which the plaintiff has been appointed receiver.

One cannot consider the conveyances and transfers involved in this action in the light of the evidence given with reference to them without being impressed that there are many things which are unusual, and which are not adequately explained by the defendants' theory. Assuming, for the moment, that the defendant Nicholas Henry did owe his son for services, no sufficient reason is given for his execut-

ing a transfer of all of his property at the time when he did, or why he should turn over property, in part, at least, to enable the son to pay his debts. There is no adequate explanation of why the son, who obtained all of this property, should find it necessary just at the time he did to execute a mortgage of $2,500 to his wife to secure an alleged indebtedness of long standing,—assuming that that indebtedness really existed. It is not in accordance with defendants' theory that the son Nicholas J. Henry, who had taken a transfer of all of this property for a valuable consideration, should unite in executing a mortgage upon most of it to secure a debt of $1,800 due from his father to Richardson. The act of the same defendant in transferring a mortgage of over $700, obtained from the sale by his father to Kirch of the sugar bush lot, to his brother-in-law Kieffer, to pay a debt of $100, is, to say the least, not reasonable. These people, so far as they appear upon the stand, were not very intelligent, or familiar with business matters, and they were not apt to indulge in a series of transfers and conveyances unless for some reason more cogent than appears in their theory of the case. It seems to me that the reason is better furnished by the plaintiff's version. Outside of his own debts, which have already been mentioned, the defendant Nicholas Henry had become liable upon about $3,000 of debts, including the George debt, represented by plaintiff, with a son now deceased. While that does not appear very clearly, I infer that the son had had the benefit of this indebtedness, and that the father was liable as an accommodation maker with him of notes. Not a great while before the conveyances in question were made, the holder of one of the notes had made some effort to have it paid. The son for whose benefit the notes had been made was worthless, and the father evidently became alarmed lest his property should be taken and absorbed in the payment of these debts. It is claimed that he did not sign and did not know of the note to Mrs. George. Upon the other hand, admissions were made by him upon the examination in supplementary proceedings that he did know of such note. In addition to that, when he was sued upon the note, he made no defense to it, and this fact may be taken into account, in addition to the legal presumptions which flow from the judgment upon the note in favor of Mrs. George against him, as settling the fact that he made it. Candee v. Lord, 2 N. Y. 268; Booth v. Wilson, 6 N. Y. Supp. 116; Carpenter v. Osborn, 102 N. Y. 552, 7 N. E. 823. Influenced by this fear of loss of his property upon debts not contracted for his personal benefit, he and his son Nicholas J. apparently set out to accomplish three things. The first was to take care of the father and of the imbecile son for the rest of their lives, and hence the provisions for their benefit in the deeds from the father to the son. The second object was to secure payment, if possible, of the debts which the father owed to what he regarded as his own creditors; hence the alleged assumption by the son of these debts. The third and fraudulent purpose was to put all of the balance of the property where it could not be reached upon these claims upon which the father had become liable for the accommodation of his son. This led to what I cannot but regard as the building up of a fictitious claim against the father in favor of the

son for alleged services.   There is nothing about this alleged claim which commends it to my judgment as a basis for taking this property away from the creditors of the father.   Doubtless the son had worked upon his father's farm.   Likewise the father had furnished support to the son and his wife, and given him money from time to time. They had undoubtedly worked along together, and for their mutual benefit.   It was doubtless the expectation that at some time when the father died the son would inherit all or part of this property, but I have not the slightest idea that it was the expectation of either party that there was being created or kept in existence a valid legal claim in favor of the son against the father upon which a judgment could be recovered, or which would serve as a basis for transfers of the property.   So, likewise, upon this theory, one can understand the other conveyances which throw light upon the ones already considered.   These parties evidently thought that they could fortify their position by having other conveyances executed which would still-more cover up the property in question.   Hence the transfer by the son to his wife for an alleged consideration, which, even upon his evidence, is illegal and fictitious.   So, also, the transfer by the son to his brother-in-law of a mortgage for between $700 and $800 to pay a claim of $100 becomes intelligible.   Upon this assumption, also, that the property really belonged to the father, we can understand why the son should have united with him in executing a mortgage to secure a debt of $1,800 due from the father, and which would not have been a claim against the property if the son, as claimed by him, had purchased it for value.   The creditor to whom this mortgage was executed held one of the notes upon which the father had become liable for his son, as before stated, and for some reason it was deemed wise to take care of his indebtedness.   An additional benefit also was that another transfer was made of the property in question, and that the son Nicholas J. received seven or eight hundred dollars in cash, which he doubtless believed could be more easily disposed of than land.   I am forced to believe that the defendant Nicholas Henry executed these transfers with intent to defraud a part of his creditors, including Anna George, represented by this plaintiff, and that his son, who received the conveyances, was a party to that intent, and that plaintiff is entitled to judgment setting aside the transfers of property made to or for the benefit of the defendants named in this action, and also requiring the defendant Nicholas J. to account for the proceeds of any property received by him upon the sale of the "sugar bush" lot to Kirch.

As stated above, I have decided this case upon the theory, sustained by present conditions, that the defendant Nicholas Henry made, either personally or through his son, the note held by Mrs. George. · At the close of the trial it was stated by defendants' attorney that, in case it was held that the judgment upon said note was with jurisdiction and valid, an application would be made to open the default of the defendant Nicholas Henry, and allow him to defend therein.   That application may be made whenever the parties see fit.

Ordered accordingly.